Filed 1/23/25  P. v. Jackson CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TIM JACKSON,<br><br>    Defendant and Appellant. | D081779<br><br><br>(Super. Ct. No. SCD245817) |

APPEAL from an order of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge.  Affirmed.

Michaela Dalton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Alana C. Butler, and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Tim Jackson was convicted of robbery (Pen. Code,[1] § 211), attempted robbery (§§ 211 & 664) and two counts of assault (§ 240). The trial court originally sentenced Jackson to two indeterminate terms of 25 years to life under the Three Strikes Law. During a recent resentencing hearing, the trial court dismissed four prison priors that were previously imposed and denied Jackson's renewed *Romero*[2] motion to dismiss his prior strikes.

Jackson appeals from the order denying his renewed motion to dismiss the prior strikes. His appointed counsel filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 stating counsel was unable to identify any arguable issues on appeal. Based on our independent review of the record, we requested supplemental briefing from the parties addressing whether the trial court abused its discretion by denying the motion to strike the prior strikes where the court's decision was based in part on factual findings that appeared to be unsupported by the record. Having considered the supplemental briefing by Jackson's appointed counsel and the Attorney General, we find no reversible error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Conviction Offenses and Resulting Judgment*

In 2015, a jury convicted Jackson of robbery (§ 211), attempted robbery (§§ 211 & 664) and two counts of assault (§ 240). Jackson also pleaded guilty to failure to appear while on bail (§ 1320.5). In addition, the trial court (Hon. David M. Rubin) found true allegations that Jackson had four prison priors (§ 667.5, subd. (b)) and three strike priors (§§ 667, subs. (b)–(i), 1170.12). The court sentenced Jackson to a determinate term of eight years and a

---

[1] All further statutory references are to the Penal Code.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

consecutive indeterminate term of 50 years to life.  This court affirmed the judgment in the direct appeal.  (*People v. Jackson* (July 21, 2016, D067888) [nonpub. opn.].)

B. *Resentencing Proceedings*

In 2022, Jackson filed a petition to recall his sentence under section 1172.75 in the superior court on the basis that his enhancement imposed under section 667.5, subdivision (b) was legally invalid.  The court appointed counsel, the People filed an opposition, and Jackson's appointed counsel filed a motion for resentencing pursuant to section 1172.75.  The record for resentencing also included the probation officer's report dated April 9, 2015 regarding Jackson's criminal history.

In its report, the probation officer described the factual circumstances of Jackson's two commitment offenses.  In January 2013, Jackson and a codefendant robbed a check-cashing business, Cash Plus, as the business was closing.  The defendants had their faces covered with bandanas, wore gloves and hooded sweatshirts.  Jackson's codefendant sequestered the storeowner to a bathroom of the store with what appeared to be a semiautomatic handgun.  The codefendant told the storeowner to get on his knees in the bathroom and threatened to shoot him if he came out.  While the codefendant held the storeowner in the bathroom at gunpoint, Jackson rifled through the store looking for cash.

Then, on August 14, 2014, Jackson attempted to rob another check cashing business, Check Into Cash.  Jackson was wearing a reflective vest and placed orange cones around the parking lot of the business, apparently as an attempt to disguise himself as a construction worker.  As the manager of the business was opening the store, Jackson grabbed her by the neck and tried to push her inside, forcing her to the ground.  Jackson then pointed a

3

handgun at employees from the neighboring businesses who chased after him as he attempted to flee.

The probation officer also discussed Jackson's prior strikes, which were committed when he was a juvenile. In 1985, he received a juvenile true finding for shooting at an inhabited dwelling (§ 246) and assault with a firearm (§ 245, subd. (a)(2)). In a separate incident from 1985, he received a juvenile true finding for two counts of assault with a deadly weapon (§ 245, subd. (a)(1)). In addition to the prior strikes, Jackson had juvenile true findings between 1983 and 1985 for burglary, drug possession, and receipt of stolen property.

Jackson had also incurred numerous convictions as an adult in addition to his commitment offenses. Between 1988 to 2006, he received numerous convictions for drug possession, firearm possession, and parole violations. The probation report described Jackson's performance while on probation and parole as poor.

In Jackson's motion for resentencing, he requested that the court invalidate the four one-year prison prior enhancements, strike two of the three strike priors pursuant, and conduct a full resentencing hearing pursuant to Senate Bill No. 483. He emphasized in his request to strike the prior strikes that his codefendant was the "primary assailant" during the 2013 robbery, since only the codefendant was identified by the victim as using a firearm. He further alleged in mitigation that his prior strikes were committed when he was a juvenile and thus less culpable, he suffered from childhood trauma, he has been diagnosed with schizophrenia, and he has incurred no violations in prison involving violence.

Jackson was resentenced on January 20, 2023. At the hearing, Jackson's counsel again noted in support of his *Romero* motion that while the

4

2013 robbery conviction was serious, the weapon involved in the incident was his codefendant's. Counsel continued to ask that the court take into consideration Jackson's young age at the time of the prior strike offenses and resentence him as a second striker.

Before imposing the sentence, the trial court (Hon. Lisa R. Rodriguez) stated that it had reviewed the complaint, the abstract of judgment, the probation report, the sentencing memoranda filed by the parties when Jackson was originally sentenced in 2015, the appellate court's opinion in the direct appeal, and the parties' resentencing memoranda. The court then invalidated all the prison priors pursuant to section 1172.72, recalled Jackson's sentence, and considered his request for resentencing under current law.

The court found Jackson did not fall outside the Three Strikes Law and declined to exercise its discretion to dismiss the prior strikes. After considering his juvenile record, criminal history, prison record, and prospects if released, the court concluded there was "insufficient evidence that . . . Jackson's risk for future violence has significantly been decreased [or] is there sufficient evidence that reflects that age and time served have reduced his risk for future violence or that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."

As relevant to this appeal, the court discussed various aspects of Jackson's criminal history that indicated a pattern of firearms use when it denied Jackson's *Romero* motion. As to Jackson's 2013 robbery conviction, the court stated that "the defendant and his co-defendant pointed a gun at the owner of the Cash Plus store," and "[h]e and the co-defendant took the cell phone and keys from the victim before moving him to the back of the

5

business at gunpoint. They forced the victim to get on his knees and threatened to shoot him if he came out of the bathroom." The court further noted that Jackson's criminal history began in 1983 with a "residential burglary with a gun." The court also noted that in connection with Jackson's conviction in 2002 for drug possession, police discovered ammunition and loaded handgun. Then, in explaining its decision not to dismiss the prior strikes, the court emphasized that Jackson is almost always armed with a firearm. The court concluded that it was "particularly concern[ed]" by Jackson's "continued utilization of firearms and victimization of the community[ ]," and thus resentencing Jackson to the lesser term would present a danger to public safety.

The trial court then resentenced Jackson to the low determinate term of 32 months, plus an indeterminate term of 50 years to life, to be served consecutively, and dismissed all prison priors.

DISCUSSION

In his supplemental brief, Jackson contends the trial court abused its discretion by denying his renewed motion to dismiss the prior strikes, because factual findings critical to the court's decision are not supported by substantial evidence. Jackson contends that in summarizing his juvenile and adult criminal record, the court incorrectly found Jackson had used a firearm in three separate offenses when he had not. Specifically, Jackson claims the court improperly found firearm use in two cases where the firearm charges were dismissed. Jackson further claims the court gave an incorrect account of his involvement in the 2013 robbery, falsely stating that Jackson was responsible for threatening the victim at gunpoint when only his codefendant possessed a firearm during the incident. Jackson asserts that since firearms use was a particularly concerning factor for the court, these factual errors in

6

the court's decision amount to prejudicial error and a violation of his state and constitutional due process rights. We disagree.

Penal Code section 1385, subdivision (a) grants trial courts discretion to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . 'in furtherance of justice.' " (*People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*). The court's discretion to strike prior strike convictions "is not boundless but must be exercised strictly within the requirements of section 1385." (*People v. Smith* (1996) 50 Cal.App.4th 1194, 1197.) Section 1385 " ' "requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal." ' " (*Williams,* at p. 159, italics in original.)

In *Williams*, the California Supreme Court addressed what factors courts may consider for ruling on a *Romero* motion: "[T]he court in question must consider whether, in light of the nature and circumstances of [the] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside [the spirit of the three strikes sentencing scheme], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra*, 17 Cal.4th at p. 161.)

We review the trial court's election not to strike prior strike convictions for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) "A trial court abuses its discretion when the factual findings

7

critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.)

"The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary." (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977–978.) Absent a showing that the court's ruling was irrational or arbitrary, we must presume the trial court acted to achieve legitimate sentencing objectives, and its decision to impose a particular sentence will not be set aside. (*Carmony, supra*, 33 Cal.4th at pp. 376–377.) "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).)

We disagree with Jackson's contentions that the trial court's denial of his *Romero* motion relied on factual inaccuracies that amount to reversible error. First, Jackson contends the trial court erred when it considered firearms charges in his criminal record that were dismissed. He cites a section 12022.5 allegation that was dismissed from his 1983 residential burglary case, and a firearm enhancement that was dismissed in his 2002 drug possession case. The relevant facts relating to these prior cases were discussed in the probation officer's report. We conclude the court was authorized in ruling on Jackson's *Romero* motion to consider the underlying facts of those offenses as set forth in the probation report, including facts pertaining to the dismissed firearms charges.

Subject to certain limitations, the Penal Code and California Rules of Court permit courts to rely on hearsay evidence contained in probation reports. Section 1203 contemplates the inclusion of hearsay in a probation

report, which the defendant is then given the opportunity to refute. (See *People v. Barajas* (1972) 26 Cal.App.3d 932, 939–940.) California Rules of court, rule 4.411.5(a)(3) provides: "Records of an arrest or charge not leading to a conviction or the sustaining of a petition may not be included unless supported by facts concerning the arrest or charge." Rule 4.411.5(c) provides: "The source of all information must be stated. Any person who has furnished information included in the report must be identified by name or official capacity unless a reason is given for not disclosing the person's identity." Accordingly, "[c]ourts routinely rely upon hearsay statements contained in probation reports to make factual findings concerning the details of the crime." (*People v. Otto* (2001) 26 Cal.4th 200, 212; *People v. Tran* 2015) 242 Cal.App.4th 877, 888, fn. 5 ["The court may also consider and rely upon hearsay statements contained in a probation report, including the police reports used to prepare the crime summaries contained in the report."].)

Here, the dismissed firearms charges recounted in the probation report constitute hearsay evidence the court was authorized to consider at Jackson's resentencing hearing. The probation officer included in the report a factual description of Jackson's criminal history and a description of the source of the information. In describing the 1983 burglary case, the probation officer stated that one of the victims identified Jackson as threatening him with a gun and a gun was subsequently found at Jackson's home. The probation officer also discussed that in connection with Jackson's 2002 drug case, officers searched Jackson's home and found ammunition and a loaded handgun. Jackson does not argue that any information provided in the probation report was inaccurate. The information pertaining to the dismissed firearm charges thus conformed with the relevant rules and was properly considered by the trial court at sentencing.

9

Jackson also contends the trial court gave an incorrect account of his involvement in the 2013 robbery when it stated that both Jackson and his codefendant had threatened the victim at gunpoint. Jackson contends that his conduct was "significantly less egregious" than what the court described, since it was only the codefendant who possessed the firearm during the offense. Because firearms use was a particular concern for the court, Jackson contends the court's factual errors played a critical role in the denial of his *Romero* motion and resulted in an abuse of discretion.

The court's statements, however, do not necessarily demonstrate that it misunderstood Jackson's role in the robbery. The trial court stated: "[T]he defendant and his co-defendant pointed a gun at the owner of a Cash Plus Store . . . . Mr. Jackson's face was covered. He wore gloves. He and the co-defendant took the cell phone and keys from the victim before moving him to the back of the business at gunpoint. They forced the victim to get on his knees and threatened to shoot him if he came out of the bathroom. Mr. Jackson's co-defendant threw away the victim's cell phone and his keys. The defendant took money from his safe and the case drawers." The court's statements accurately reflect that there was some level of planning involved and that Jackson and his codefendant were working together during the robbery. Thus, when read in context, the court's statement could be interpreted to mean the court understood that Jackson was acting in concert with his accomplice even if he himself was not personally armed with a firearm during the incident.

Regardless, we conclude that even if the court had a mistaken understanding of Jackson's 2013 robbery offense and improperly relied on the dismissed firearm charges, any error was harmless. Even when a trial court takes improper factors into account in sentencing, "[a] remand for

10

resentencing is required only where it is reasonably probable a different result would have occurred had the improper factor[s] not been considered." (*People v. Kellett* (1982) 134 Cal.App.3d 949, 962–963; *People v. Price* (1991) 1 Cal.4th 324, 492 ["When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper."].)

Setting aside the 2013 robbery conviction and dismissed firearm charges, Jackson's criminal history is replete with firearms use. Most notably, Jackson was armed during his most recent offense in 2014 for attempted robbery, during which he directly threatened two individuals with a handgun. Jackson's prior strike offenses were also related to firearms use. In his prior strikes from 1983, he was identified as the shooter who fired four shots at a vehicle driven by a rival gang member. Then, in the 1985 prior strike, he shot a rival gang member at a high school. The victim suffered five gunshot wounds: one in the cheek, two in the abdomen, and two on the right side of his neck. Since Jackson's prior strikes and his most recent offense indisputably involved the use of a firearm, the court was appropriately troubled by Jackson's pattern of firearms use when it denied his *Romero* motion.

Moreover, the trial court's sentencing decisions were not based exclusively on Jackson's history of firearms use. In explaining its ruling, the court recognized in mitigation that Jackson's priors strikes all occurred when he was a juvenile, he was diagnosed with a mental illness, and he suffered childhood trauma. However, the court found any factors in mitigation were outweighed by a myriad of aggravating factors. These aggravating factors included that Jackson's commitment offenses "are more sophisticated crimes

11

and that there was some planning that went into them." The court was also concerned by Jackson's prison behavior, finding that he "systematically failed to comply with the rules of prison." Specifically, Jackson had four rules violations for improper cell phone possession, which the court found suggested a level of criminal sophistication. The court concluded, "[T]here is insufficient evidence that Mr. Jackson's risk for future violence has significantly been decreased nor is there sufficient evidence that reflects that age and time served have reduced his risk for future violence or that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." Given the court's sentencing comments in their entirety, we conclude that even assuming the trial court erred by considering Jackson's dismissed firearms charges or incorrectly recounted his involvement in the 2013 robbery, there is no reasonable probability that the trial court would have reached a different result on his *Romero* motion.[3]

---

[3] Because we conclude the trial court's statements, even if considered factually unsupported, do not amount to an abuse of discretion that warrants a new resentencing hearing, we need not address the parties' arguments regarding forfeiture.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.